FILED

AUG 09 2019

Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| UNITED STATES OF AMERICA, | Cause No. CR 04-87-BLG-DLC |
| --- | --- |
| Plaintiff/Respondent, | CV 17-20-BLG-DLC |
| vs. | ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE |
| ROBERT W. GREEN, | OF APPEALABILITY |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Green's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. On February 15, 2017, the Court of Appeals granted Green leave to file a second or successive motion in this Court. Green, represented by Assistant Federal Defender David Ness, filed an amended motion shortly thereafter. The United States has filed an answer and Green a reply.

**I. Background**

On May 24, 2004, Green was indicted on drug and gun charges along with twelve co-defendants. One of his co-defendants was Martin Garcia.

On August 19, 2004, the grand jury handed down a Superseding Indictment.

1

Along with Garcia and others, Green was charged with one count of conspiracy to distribute more than 50 grams of actual methamphetamine between April and December 2003, a violation of 21 U.S.C. § 846 (Count 1); one count of distributing methamphetamine or possessing it with intent to distribute in April 2003, a violation of 21 U.S.C. § 841(a)(1) (Count 2); three counts of possessing various quantities of methamphetamine with intent to distribute, violations of 21 U.S.C. § 841(a)(1) (Counts 3, 20, and 25); one count of possessing a firearm in furtherance of a drug trafficking crime, violations of 18 U.S.C. § 924(c)(1) (Count 21); and one count of distributing more than 5 grams of actual methamphetamine on December 9, 2003, a violation of 21 U.S.C. § 841(a)(1) (Count 24).

Green and Garcia were tried together before a jury in August 2005. Twenty-seven witnesses testified, including five co-defendants as well as other cooperating witnesses. The jury deliberated for a day. Green was convicted of Counts 1, 3, 20, 21, 24, and 25.[1]

At sentencing, Green was held responsible for 2.638 kilograms of methamphetamine. His total offense level was 34. With a criminal history

---

[1] Except as to Count 1, the overarching conspiracy count, the United States pled both aiding and abetting and a *Pinkerton* theory. *See Pinkerton v. United States*, 326 U.S. 640, 647 (1946) ("If [the overt act element in a conspiracy charge] can be supplied by the act of one conspirator, we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the substantive offense."). The jury acquitted Green on all *Pinkerton* counts except Counts 22 and 23. The judge granted Green's motion for judgment of acquittal on those two counts.

category of IV, his advisory guideline range was 210 to 262 months. He was sentenced to serve 220 months on Counts 1, 3, 20, 24, and 25, all to run concurrently, and 60 months on Count 21, consecutive to the other counts, for a total term of 280 months. *See* Minutes (Docs. 514, 519); Judgment (Doc. 521) at 2–3.

Green appealed. He argued that the evidence was not sufficient to support his conviction on Count 21 and that his motion for new trial, based on evidence of his below-average intelligence, should have been granted. On August 10, 2007, the Ninth Circuit Court of Appeals rejected his arguments and affirmed his conviction. *See United States v. Green*, No. 06-30332 (9th Cir. Aug. 10, 2007) (unpublished mem. disp.) (Doc. 541).

Green petitioned the United States Supreme Court for a writ of *certiorari*. The petition was denied on January 7, 2008. *See Green v. United States*, No. 07-7695 (U.S. Jan. 7, 2008).

On September 2, 2008, Green, acting *pro se*, moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The motion and a certificate of appealability were denied on October 31, 2008. The Court of Appeals denied a certificate of appealability on December 21, 2009. *See* Mot. § 2255 (Doc. 598); Orders (Docs. 604, 674).

On May 27, 2015, pursuant to 18 U.S.C. § 3582(c)(2) and Amendments 782

and 788 to the United States Sentencing Guidelines, Green's sentence on the drug counts was reduced from 220 months to 176 months. With the remaining 60-month consecutive term on Counts 11 and 12, Green is now serving a total prison sentence of 236 months. *See* [Second] Am. Judgment (Doc. 863) at 1.

On February 3, 2016, then-United States Attorney Michael W. Cotter wrote a letter to many defendants, including Green, who were prosecuted by Assistant United States Attorney James Seykora and found guilty at trial. *See* Letter (Doc. 883-1 at 7–8). At the time the letter was sent, the United States was aware of three cases in which Seykora failed to disclose exculpatory or impeaching information or failed to correct false testimony. The first of these cases was filed by Green's co-defendant, Martin Garcia.

## II. Co-Defendant Garcia's § 2255 Motion

On August 14, 2009—about ten months after Green's § 2255 motion had been denied in this Court and while his appeal was pending—Green's co-defendant Garcia, represented by counsel Wendy Holton, filed a motion under 28 U.S.C. § 2255. Among other claims, Garcia asserted that his trial counsel was ineffective because he failed to impeach an important witness, Gwynne Black, by showing that she received immunity for her testimony and by demonstrating discrepancies among her grand jury testimony, her debriefing with case agents, and her trial testimony. He made similar allegations with respect to witness Prem, Black's

mother, and he alleged the United States violated his right to due process by failing to correct the record regarding Black's immunity, contrary to *Napue v. Illinois*, 360 U.S. 264 (1959). *See* Order (Doc. 746) at 1–2, 26.

The trial testimony at issue came at the end of Black's testimony on direct examination by AUSA Seykora:

> Q. You were not charged federally?
>
> A. No.
>
> Q. You were only charged in the state court system?
>
> A. Yes.
>
> Q. Have *any* promises been made to you or your mother *at all* by the United States?
>
> A. Not that I can recall.
>
> Q. Nothing further.

2 Trial Tr. (Doc. 404) at 317:10-17 (emphases added).

In fact, Seykora and Black personally signed two letters, one on October 14 and one on October 16, 2003, memorializing and acknowledging that Black's statements could not be used against her as evidence or in any other way, such as to "uncover other incriminating evidence, focus the investigation, decide to initiate prosecution, interpret other evidence, or otherwise plan trial strategy." *United States v. Dudden*, 65 F.3d 1461, 1467–68 (9th Cir. 1995). The letters said:

5

> Gwynn Hailey Black
>
> Re: USE IMMUNITY
>
> Dear Ms. Black:
>
> Please be advised with respect to your debriefing in Billings, Montana, on October 14, 2003, and succeeding days, that the United States does not intend to prosecute you based on Title 21 U.S.C. violations which may be revealed and upon which prosecution could be based as a result of your debriefing.
> You should, however, be cautioned that this policy does not extend to any violations of the perjury statutes which are found in 18, United States Code, Sections 1621 and 1623, or to false statements made pursuant to 18, United States Code, Section 1001, or to any crimes of violence.

*Garcia* Answer Ex. D (Doc. 683-4) at 1, Ex. F (Doc. 683-6) at 1. Black was also orally advised she had immunity for her grand jury testimony. *See Garcia* Answer Ex. E (Doc. 683-5) at 4:5–4:14.

Near the end of trial, while instructions were being settled, the subject of immunity came up. This was a second opportunity to set the record straight, at least for the presiding judge. Seykora did not do it. He only suggested unidentified witnesses received use immunity for statements made before the grand jury. 3 Trial Tr. (Doc. 405) at 702:5–703:16; *see also* Order (Doc. 746) at 8–11.

Immunity is a promise. Judge Cebull concluded:

> [W]hen the prosecutor said, "Have *any* promises been made to you or your mother *at all* by the United States?," he left a false impression with the jury—and with me, since I had no idea Gwynne Black received any immunity, much less use and derivative-use immunity, 3 Trial Tr. at 702:5–703:16—when he failed to remind Black of his

6

agreement with her.

Order (Doc. 746) at 10.

Nonetheless, there was no evident reason to suspect Seykora failed to correct false testimony by other witnesses or failed to disclose relevant impeachment information like immunity agreements. And other witnesses corroborated notable details of Black's testimony. *Id.* at 11–18. Judge Cebull found Garcia was not prejudiced by Seykora's failure to correct the false impression Black's testimony created. *See id.* at 19–26. The Ninth Circuit Court of Appeals affirmed the denial of Garcia's § 2255 motion on December 19, 2012. *See* Mem. (Doc. 803), *United States v. Garcia*, No. 11-35820 (9th Cir. Dec. 19, 2012).

### III. Green's Second § 2255 Motion

The Court of Appeals has granted Green leave to file a second motion in this Court. *See* Order (Doc. 883-2). But obtaining leave to file is only the first of two restrictions Congress imposes on second or successive motions under 28 U.S.C. § 2255. A district court must "dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements" for relief specially applied to second or successive motions. 28 U.S.C. § 2255(h) requires Green to show that "newly discovered evidence"—that is, evidence of Black's false testimony—"if proven and viewed in light of the evidence as a whole, would be sufficient to show

by clear and convincing evidence that no reasonable factfinder would have found [him] guilty of the offense." 28 U.S.C. § 2255(h)(1); *see also id.* § 2244(b)(2)(B); *Brown v. Muniz*, 889 F.3d 661, 674 (9th Cir. 2018). "Clear and convincing evidence that no reasonable factfinder would have found [Green] guilty" is a far higher standard than "any reasonable likelihood that the false testimony could have affected the judgment of the jury," *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc), the standard that normally applies to *Napue* claims.

Green was convicted of six counts. Count 1, the drug conspiracy charge, extended from April to December 2003. Count 3 charged Green and Santiago with possessing methamphetamine in late June 2003 with intent to distribute it. Count 20 charged Green, Santiago, Bitz, Pennington, Kimber, and Zindler with possessing methamphetamine in early October 2003 with intent to distribute it. Count 21 charged the same five defendants with possessing two firearms in furtherance of the Count 20 offense. Counts 24 and 25 charged Green alone with distributing and possessing with intent to distribute two specific quantities of methamphetamine in early December 2003.

Green's motion asserts that Seykora's failure to correct Black's testimony was material on all counts of conviction. He focuses on Count 21, the § 924(c) count, noting that Judge Cebull relied on Black's testimony to a significant degree in denying his motion for acquittal on that count. *See* Am. § 2255 Mot. (Doc. 887)

at 14; Reply (Doc. 899) at 6–7. It may well be reasonable to infer that evidence of the incentives motivating Black's testimony would undermine confidence in the jury's verdict on Count 21 and its predicate, Count 20. *See* Order (Doc. 492) at 8–10. That is the nature of the prejudice a defendant must show to obtain relief on an ordinary *Napue* claim.

But undermining confidence in the verdict is not enough in Green's case. Because the instant motion is his second § 2255 motion, he must allege facts sufficient to support an inference that he may show, by clear and convincing evidence, that no reasonable juror would have found him guilty beyond reasonable doubt. *See Brown*, 889 F.3d at 675.

Counts 20 and 21 arose from Green's stay at the Red Roof Inn in Billings in early October 2003. He shared a room with Parker and Bitz. Santiago and Black shared a second room. Parker—an unindicted coconspirator—testified that all five were there for two days, they intended to sell methamphetamine, and Santiago retrieved two firearms from the safe house and brought them to the hotel. *See, e.g.*, 3 Trial Tr. (Doc. 405) at 558:12–561:6. Parker also reported that Green said he was not sure whether Santiago really wanted him to come to Billings to distribute methamphetamine or instead intended to kill him. *See id.* at 555:22–556:5. And an officer testified to the seizure of methamphetamine from one of the hotel rooms and 323.3 grams of pure methamphetamine from Santiago's vehicle. *See* U.S.

9

Answer (Doc. 895) at 12. Even a juror aware of the reasons Black might not be a reliable witness could still find, beyond reasonable doubt, that Green knew Santiago had firearms and understood and agreed with their potential role in drug trafficking. And this juror could have taken the same evidence supporting Green's conviction on Counts 20 and 21 to support his conviction on Count 1 as well. Green's allegations in his § 2255 motion could not amount to clear and convincing evidence that he is not guilty of Counts 1, 20, or 21.

Similarly, Counts 24 and 25 depended on testimony from two detectives, not Black. *See, e.g.*, U.S. Answer (Doc. 895) at 25–26. Green cannot meet the applicable standard as to those counts.

Green's conviction on Count 3 depended exclusively on Black's testimony. Count 3 alleged that Green and Santiago possessed more than 50 grams of a substance containing methamphetamine with intent to distribute it on or around June 25, 2003. Black said Green and Santiago took six ounces of "crank," meaning methamphetamine, from Washington to Montana in early June 2003 in order to sell it. *See* 2 Trial Tr. at 252:11–254:5. The only corroborating evidence consisted of motel records showing that Green and Santiago probably traveled to Montana in June 2003 and paid cash for their rooms. *See id.* at 212:9–223:5. But, even so, a reasonable juror could still find Black credible, despite her false representation that she had not received "any" promises "at all" from the United

States. Her testimony about the June 2003 trip had some (albeit slim) corroboration in the motel receipts, and her testimony about many other things had more corroboration from other witnesses and evidence. A reasonable juror could believe she knew what she was talking about and was attempting to be honest and accurate. And that juror could find, beyond reasonable doubt, that Green and Santiago took six ounces of methamphetamine to Montana in June 2003 hoping to sell it.

Black's false testimony and her immunity, taken together with all the other evidence in the case, do not permit the Court to find *clear and convincing* evidence that *no* reasonable juror would have found Green guilty beyond reasonable doubt of any count of conviction.[2] Green's motion must be denied because he cannot meet the standard imposed by 28 U.S.C. § 2255(h)(1).

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §

---

[2] As Green's allegations do not meet the standard of 28 U.S.C. § 2255(h)(1), there is no need to consider the United States' procedural defenses. But they are built on an unsound assumption that Seykora produced to Green's counsel everything he produced to Garcia's counsel.

11

2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012) (quoting *Slack*, 529 U.S. at 484).

Green certainly makes a substantial showing that his constitutional right to due process was violated, but Black's testimony was corroborated in some respects, though not all, by other witnesses and other evidence. Reasonable jurists would not find that impeachment evidence about her amounts to clear and convincing evidence that no reasonable juror would have convicted Green. His allegations do not meet the high standard of 28 U.S.C. § 2255(h)(1). This case is effectively controlled by *Brown v. Muniz*, 889 F.3d 661 (9th Cir. 2018). A COA is not warranted.

Accordingly, IT IS ORDERED:

1. Green's second motion under 28 U.S.C. § 2255 (Doc. 887) is DENIED.

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Green files a Notice of Appeal.

12

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 17-20-BLG-DLC are terminated and shall close the civil file by entering judgment in favor of the United States and against Green.

DATED this 9th day of August, 2019.

Dana L. Christensen, Chief District Judge
United States District Court